## 2015-1248

# United States Court of Appeals
# for the Federal Circuit

---

POLY-AMERICA, L.P.,

*Plaintiff-Appellant,*

*v.*

API INDUSTRIES, INC.,

*Defendant-Appellee.*

---

*Appeal from the United States District Court for the District Of
Delaware in Case No. 1:13-CV-00693-SLR, Judge Sue L. Robinson*

---

**NON-CONFIDENTIAL BRIEF OF PLAINTIFF-APPELLANT
POLY-AMERICA, L.P.**

Erica W. Harris
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7810
Facsimile: (713) 654-6666
eharris@susmangodfrey.com

LeElle Krompass
SUSMAN GODFREY L.L.P.
560 Lexington Avenue, 15th Floor
New York, NY 10022
Telephone: (212) 336-8341
Facsimile: (212) 336-8340
lkrompass@susmangodfrey.com

Corrected: March 11, 2015

*Attorneys for Plaintiff-Appellant
Poly-America, L.P.*

Originally filed: March 9, 2015

## CERTIFICATE OF INTEREST

Counsel for Poly-America, L.P. certifies the following:

I.      The full name of every party or amicus represented by us is:

        Poly-America, L.P.

II.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by us is:

        N/A

III.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party represented by us are:

        None

IV.    The names of all law firms and the partners or associates who appeared for the party now represented by us in the trial court or are expected to appear in this Court are:

        Susman Godfrey L.L.P.: Erica Harris and LeElle Krompass
        Farnan LLP: Brian Farnan

Dated: March 11, 2015                    /s/ Erica W. Harris
                                       Erica W. Harris
                                       Counsel for Appellant

# TABLE OF CONTENTS

I.      Statement of Related Cases ............................................................1

II.    Jurisdictional Statement................................................................1

III.   Statement of Issues ......................................................................1

IV.   Introduction...................................................................................2

V.     Statement of the Case ...................................................................5

      A.    Collins had no experience with what an ordinary observer would perceive when using the accused products or patented design......................................................................................6

      B.    Collins' opinions reflect those of an expert in product packaging, not an ordinary observer. ...................................8

      C.    Collins testified to a possibility without any evidence of its occurrence or frequency. .....................................................8

VI.   Summary of the Argument .........................................................10

VII.  Standard of Review.....................................................................11

VIII. Argument ...................................................................................12

      A.    It was error for the district court to rely on Collins' testimony regarding what an ordinary observer would perceive.....................................................................................13

           1.    Collins cannot be simultaneously an expert and a lay observer....................................................................14

           2.    Collins had no past experience with ordinary observers' use of corrugated boxes or anything else similar to the accused boxes or patented design.......................17

           3.    It was necessary for Collins to support his opinions with consumer testing or surveys, which he did not do......................................................................................18

B.     Even if the district court could properly rely on Collins as an expert, Collins' testimony did not bear on the relevant legal question. ...........................................................................21

1.     The policy behind design patents requires an analysis of what is regularly observable. ................................................21

2.     The ordinary observer test considers what hypothetical ordinary observers regularly perceive.................23

3.     Collins did not opine on what a hypothetical ordinary observer would regularly perceive.............................................28

IX.    Conclusion ....................................................................................30

ADDEDNUM

December 2, 2014 Final Judgment (Dkt. 168) ...........................................A12

November 25, 2014 Order (Dkt. 164) .......................................................A14

November 25, 2014 Memorandum Opinion (Dkt. 163)............................A16

U.S. Patent No. D569,719 S ....................................................................A51

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)..................................................................12

*Arminak & Assocs. v. St.-Gobain Calmar, Inc.*,
    424 F. Supp. 2d 1188 (C. D. Cal. 2006)......................................27

*Braun Inc. v. Dynamics Corp. of America*,
    975 F.2d 815 (Fed. Cir. 1992) ............................................. 14, 16

*Bush Indus., Inc. v. O'Sullivan Indus., Inc.*,
    772 F. Supp. 1442 (D. Del. Sept. 5, 1991) ...................... 15, 16, 25

*Chef'n Corp. v. Trudeau Corp.*,
    No. C08-01135 MJP, 2009 WL 1564229 (W.D. Wa. June 4,
    2009) ................................................................ 15, 16, 17

*Contessa Food Prods., Inc. v. Conagra, Inc.*,
    282 F.3d 1370 (Fed. Cir. 2002) ................................. 13, 22, 24, 25

*Crocs, Inc. v. Int'l Trade Comm'n*,
    598 F.3d 1294 (Fed. Cir. 2010) ...................................................12

*Door-Master Corp. v. Yorktowne, Inc.*,
    256 F.3d 1308 (Fed. Cir. 2001) ........................................... 23, 24

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008) .....................................................22

*Fin Control Sys. Pty, Ltd. v. OAM, Inc.*,
    265 F. 3d 1311 (2001) ..................................................................11

*Gorham Mfg. Co. v. White*,
    81 U.S. 511, 20 L.Ed. 731 (1871)................................. 12, 14, 22, 27

*Huang v. Marklyn Group, Inc.*,
    No. 11-cv-01765-REB-ENB, 2014 WL 3559367 (D. Co. July
    18, 2014) ......................................................................15

*Int'l Seaway Trading Corp. v. Walgreens Corp.*,
    589 F.3d 1233 (Fed. Cir. 2009) ...................................................11

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)........................................................................20

*Lawman Armor Corp. v. Master Lock Co.*,
    No. CIV.A. 02-6605, 2004 WL 440177 (E.D. Pa. Mar. 11,
    2004) ................................................................................................16

*Minka Lighting, Inc. v. Craftmade Int'l, Inc.*,
    No. Civ. A. 3:00-CV-088, 2002 WL 1331883 (N.D. Tex. June
    14, 2002) .................................................................... 19, 27, 28

*OddzOn Prods., Inc. v. Just Toys, Inc.*,
    122 F.3d 1396 (Fed. Cir. 1997) ....................................................26

*Smith v. Whitman Saddle Co.*,
    148 U.S. 674 (1893)........................................................................22

*Warner Bros., Inc. v. Am. Broadcasting Cos.*,
    720 F.2d 231 (2d Cir. 1983) ..........................................................19

**Statutes**

28 U.S.C. § 1295 .........................................................................................1

28 U.S.C. § 1331 .........................................................................................1

28 U.S.C. § 1338(a) ....................................................................................1

35 U.S.C. §§ 1 et seq...................................................................................1

**Rules**

Fed. R. Civ. P. 56(a).......................................................................... 11-12

Federal Rule of Evidence 701 .......................................................... 15, 17

Federal Rule of Evidence 702.................................................... 11, 15, 17

## I.    Statement of Related Cases

Counsel is unaware of any appeal in or from the same civil action before this or any other appellate court. Counsel is similarly unaware of any related cases pending in this or any other court that will directly affect or be directly affected by this Court's decision in the pending appeal.

## II.    Jurisdictional Statement

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq*. This Court has jurisdiction to hear the present appeal under 28 U.S.C. § 1295 because the Federal Circuit has exclusive jurisdiction over patent appeals. The district court entered Final Judgment on December 2, 2014. Appellant timely filed notice of appeal on December 31, 2014.

## III.    Statement of Issues

1.    Whether the district court erred in relying on the testimony of API's expert regarding what a hypothetical ordinary observer would perceive.

2.    Whether the district court erred in finding that the theoretical possibility one hypothetical ordinary observer might possibly see the tabs and slots or lack thereof upon opening or recycling without regard to any showing of frequency was sufficient to support summary judgment in favor of API.

## IV.    Introduction

On April 17, 2013, plaintiff-appellant Poly-America, L.P. ("Poly-America") sued defendant-appellee API Industries, Inc. ("API") alleging infringement of U.S. Patent No. D569,719 S ("the '719 patent"). Poly-America and API are competitors in the manufacture and sale of household plastic bags sold in corrugated boxes. The '719 patent claims a design for an opening on a product container as shown in ten drawings, which Poly-America uses on its own products (Figures 1 and 8 are shown below).



Poly-America accused seven of API's boxes of infringing the '719 patent. One of the accused boxes is pictured here:

 

2

API moved for summary judgment of non-infringement, contending that a hypothetical ordinary observer would not perceive the design on the accused boxes as substantially similar to the patented design. Specifically, API contended that a hypothetical ordinary observer would see that the accused boxes did not have the tabs and slots depicted in the patented design when opening the accused products from the top (rather than from the perforated opening) or destroying the container. API cited as its only evidence the opinion of its expert, Robert C. Collins II.

Poly-America contended that a hypothetical ordinary observer would find the accused boxes substantially similar to the patented design. Specifically, Poly-America contended that a hypothetical ordinary observer would not see the tabs and slots depicted in the patented design, because an ordinary observer would not open the box from the top rather than from the perforated opening and would not destroy the box in such a way as to preserve the top flaps so as to notice whether the top flaps had tabs or slots or not. Poly-America cited the following evidence:

- a non-expert employee did not open the accused box from the top and did not destroy the box in a way that caused him to notice the construction of the top flaps and whether they had tabs or slots or not;

- API's expert had not observed anyone ever opening or destroying an accused box or a mock up of the patented design in a way that preserved the top flaps so as to reveal the existence or a lack of tabs and slots;

3

*Confidential Material Redacted*

- ██████████████████████████████████████████
  ██████████████████████████████████████████
  ████████████████████████████ ;

- API's expert conceded that the only way a hypothetical ordinary observer could possibly notice that the accused boxes' top flaps did not include tabs and slots upon opening or destruction would be to open or destroy the accused boxes in a specific way so as to not tear the top flaps; and

- API's expert had no basis for saying any percentage of consumers would open or destroy the carton in that way.

Because API's expert had not undertaken any testing of his hypotheses, Poly-America moved to exclude his opinions regarding what a hypothetical ordinary observer would perceive. In accordance with lower court decisions, Poly-America argued that Collins' claim to be an expert in packaging design precluded him from testifying as to what an ordinary observer would perceive when handling the packaging absent testing. Poly-America argued, further, in accordance with this Court's guidance, that Collins' opinions were unreliable because he did not conduct any testing to verify his hypotheses even though such testing is routinely done in the packaging industry and Collins did do such testing in other contexts.

On November 25, 2014, the district court granted API's motion for summary judgment of non-infringement and denied in part Poly-America's motion to

exclude certain opinions of API's proposed expert. The district court provided a memorandum, setting forth its reasoning only as to the grant of summary judgment. In granting summary judgment on the issue of non-infringement, the district court relied on the testimony of Collins that an ordinary observer would see the tabs and slots shown in the '719 patent during opening or recycling the boxes, and found that, because the accused products did not include those tabs and slots, the designs would not appear substantially the same to an ordinary observer.

Poly-America appeals the district court's denial of motion to exclude and the grant of summary judgment.

## V.    Statement of the Case

API relied on the opinions of Robert Collins in its motion for summary judgment.[1] API designated Collins as an expert on packaging.[2] However, Collins had no expertise regarding what the ordinary observer would perceive when using corrugated containers, let alone the accused products.[3] Instead, Collins opined that consumers might open or destroy a box in a certain way without any evidence of its occurrence or frequency.[4]

---

[1] API's motion for summary judgment of non-infringement is at A583-613.

[2] A651.

[3] *Infra* Part V, Section A.

[4] A845-47 (Collins Depo. 178:19-25; 182:2-10; 185:25-186:8).

### A. Collins had no experience with what an ordinary observer would perceive when using the accused products or patented design.

Collins' experience was with different packaging materials, different packaging designs and different packaging purposes. While API repeatedly stated that Collins had 40 years of experience in product packaging, product packaging is a broad field that includes a variety of different materials, opening styles, and purposes, such as for shipping or retail.[5] When it came to the packaging at issue – a corrugated box with a perforated opening containing trash bags that were sold at retail, Collins had no relevant experience. Collins could not cite a single instance where he designed or even reviewed a design for a corrugated container with a perforated opening let alone one that customers would see on a store shelf.[6] Collins had never designed containers for trash bags or any type of plastic bags.[7]

Collins had never tested any corrugated containers.[8] Collins had "never worked for a company that tested opening features with consumers on paperboard."[9] Consequently, Collins conceded that he had no idea how people would open corrugated containers.[10]

---

[5] *See, e.g.*, A531-32, 877, 882-83.

[6] A451, A100-102 (aside from tear tape features, which are different altogether from the pull-open feature on the accused design).

[7] A448, A450 (Collins Depo. 11:12-14; 13:7-9).

[8] A477 (Collins Depo. 146:20-24).

[9] A465-66 (Collins Depo. 65:19-66:2). The parties, and Collins, use paperboard interchangeably with corrugated and cardboard in this context. *See, e.g.*, A426 (Collins Report ¶ 60).

[10] A470 (Collins Depo. 70:5-14).

Outside of this case, Collins has conducted extensive consumer research for other types of products and product containers.[11] In fact, consumer testing was so routine for a large consumer products companies employing Collins that the company had an on-site facility for testing.[12] Research Collins performed in his non-litigation work was aimed at determining consumer perceptions[13] because it is impossible to predict consumer perceptions of product packaging without testing:

> Q: Did you ever receive results in this research that you just described that was surprising?
>
> A: Actually, quite often, because engineers or designers or whatever, you can't ever assume you know what the consumer wants.[14]

Collins testified further that consumer studies prompted modification of the package or product design on several occasions.[15]

Despite the importance of consumer research, despite the regular use of consumer research in Collins' non-litigation work, and despite the fact that he could have done consumer research in this case, Collins did not conduct any consumer research to support his opinions.[16]

---

[11] A430 (Collins Report ¶ 76, ¶77); A453-58 (Collins Depo. 52:24-56:3; 57:14-21); A460 (Collins Depo. 59:4-15).

[12] A430 (Collins Report ¶ 77); A460-61 (Collins Depo. 59:25-60:12). Collins has been employed by several companies to conduct consumer research but never conducted tests "to study corrugated or paperboard packaging opening features."

[13] A454-55 (Collins Depo. 53:23-54:7).

[14] A462 (Collins Depo. 61:4-11).

[15] A459 (Collins Depo. 58:17-58:25).

[16] A480-01 (Collins Depo. 166:7-167:3).

### B. Collins' opinions reflect those of an expert in product packaging, not an ordinary observer.

Collins claimed to be both an ordinary observer and an expert in product packaging,[17] but if he is an "expert" then his personal opinions are not those of an ordinary observer. Collins conceded that his opinions on how an ordinary observer would open the boxes were based on possibilities, hypotheticals, and his own personal experience:

> Q: . . . To see the tabs and slots . . . you say that [an ordinary observer] could notice [them] once they open the top flaps, right?
>
> A: ***Potentially*** if they open the top flaps to access the product or they open the top flaps to dispose of the container, they could notice them.
>
> Q: But to notice them, they'd have to open the top flaps in a specific way so as to not tear those tabs and slots; isn't that right?
>
> A: You know, ***anything is possible***.
>
> Q: . . . [B]ut you – you don't know how consumers act in this situation, because you haven't tested it, have you?
>
> A: No, I haven't tested it . . . .[18]

### C. Collins testified to a possibility without any evidence of its occurrence or frequency.

The district court relied on Collins' opinion that "an ordinary observer would view the . . . tabs and slots of the patented design 'upon opening the box

---

[17] *See, e.g.*, A423 (Collins Report ¶ 53).

[18] A845 (Collins Depo. 178:11-179:5) (emphasis added); *see also* A470-71 (Collins Depo. 70:15-71:3).

from the top or flattening it for recycling.'"[19] However, Collins had no support for that opinion; he did not have any past experience observing consumers opening corrugated containers and had not conducted any consumer research regarding how consumers would open, use, or destroy either a mock-up of the patented design or the accused boxes.[20]

In fact, during his deposition, Collins also testified to just the opposite: that an ordinary observer might never notice the tabs and slots. Collins admitted that when the boxes "are sealed, they're all going to look the same" and that, because the box top and bottom remain closed during the normal use of the product, the ordinary observer would not be able to see the tabs and slots or flaps unless "the box is opened with all the top flaps intact," i.e. they broke down the box down in such a specific way as to keep all of those features intact.[21] Collins admitted that it would be possible to open the box in such a way that the tabs and slots would not be visible.[22] Most importantly, Collins had "no idea what the percentage is" of consumers who open or destroy the box in such a way as to keep all top and bottom flaps preserved such that the features could be observed.[23]

---

[19] A31.

[20] A469-71 (Collins Depo. 69:23-70:14; 71:4-15); A507-08 (Collins Depo. 221:25-222:3).

[21] A845-47 (Collins Depo. 178:19-25; 181:1-5; 182:2-10; 185:25-186:8).

[22] A846 (Collins Depo. 182:17-183:20).

[23] A846 (Collins Depo. 182:2-183:20).

Even defining the normal use to include the ultimate destruction of the product container, API presented no evidence an ordinary observer *would* open or dispose of the product container in a way that would preserve the top flaps intact. To the contrary, API's expert conceded that such features could very well be destroyed upon the consumer's destruction of the box.[24]

## VI.    Summary of the Argument

In granting summary judgment of non-infringement, the district court based its decision that the accused products and patented design are not substantially similar on its finding that an ordinary observer would see the tabs and slots of the patented design when opening the box from the top or breaking down the box.[25] The district court relied on the opinions of API's expert, Robert Collins, in determining that a hypothetical ordinary observer could see the tabs and slots if the box was opened or disposed of in a certain way.[26]

The district court's opinion should be reversed for two independent reasons. First, API's expert testimony was not competent summary judgment evidence and should not have been considered. Many lower courts have held that an expert cannot opine on what ordinary observers would perceive under Rule 701 because a lay expert would have no more experience in making the comparison between the

---

[24] A846-47 (Collins Depo. 182:2-10; 185:25-186:8).
[25] A30-32.
[26] A31.

patented design and the accused design than a juror would. Nor can an expert opine under Rule 702 because there is no scientific basis for such an opinion without supporting consumer research.

Second, even if properly admitted and relied upon, Collins' testimony was insufficient to warrant summary judgment because it identified only a theoretical possibility, not an actual or frequent occurrence. The purpose of protecting designs through design patents is to prevent ordinary consumers from being misled into buying a different product because they recognize the design and believe the product to be another. Here, Collins only opined on possibilities, conjectures, and ways that a hypothetical consumer "could" perceive the patented design, without any evidence as to how often it occurs, if ever. By relying on Collins' testimony, the district court erroneously applied the ordinary observer test and granted summary judgment under an improper standard.

## VII.    Standard of Review

A court reviews the grant of summary judgment of non-infringement de novo, viewing the record in the light most favorable to the non-moving party. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1237 (Fed. Cir. 2009); *Fin Control Sys. Pty, Ltd. v. OAM, Inc.*, 265 F. 3d 1311, 1317 (2001). Summary judgment is only appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P.

56(a). Summary judgment, therefore, should only be granted when no "reasonably jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## VIII.   Argument

This Court has said that whether a design patent is infringed depends on whether "an ordinary observer, familiar with the prior art designs, would be deceived into believing that the accused product is the same as the patented design." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010); *see also Gorham Mfg Co. v. White*, 81 U.S. 511 (1871) ("[I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.").

Here, the district court accepted API's argument that an ordinary observer would see the tabs and slots of the patented design when opening or breaking down the box, and because the accused design did not contain those tabs and slots, the designs are not substantially similar.[27]  The district court found that "API presented expert testimony that . . . an ordinary observer would view the even top flaps, tabs and slots of the patented design 'upon opening the box from the top or flattening it

---

[27] A30-32.

for recycling.'" Having accepted API's expert testimony as competent summary judgment evidence, the district court held that "[t]o defeat API's motion, Poly was obligated to identify a factual dispute with evidence that would permit a reasonably jury to return a verdict in Poly's favor" and that Poly-America "was unable to point to any evidence that would contradict API's contention that the flaps, tabs and slots are visible at the point of disassembly. . . ."[28]

The district court's holding is erroneous for two independent reasons. First, API's expert testimony was not competent summary judgment evidence and should not have been considered. Second, even if properly admitted and relied upon, API's expert testimony was insufficient because it identified only a theoretical possibility and not what would ordinarily occur.

### A. It was error for the district court to rely on Collins' testimony regarding what an ordinary observer would perceive.

The district court erred in relying on Collins' testimony regarding what an ordinary observer would perceive because an expert should not be permitted to opine on that factual question absent some scientifically tested data to support the

---

[28] The district court also held that Poly-America "was unable to point to any evidence that would contradict API's contention . . . that recycling was part of a box's 'normal use.'" A31. This Court has already held that the normal life of a product extends through the product's destruction. *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370 (Fed. Cir. 2002). Thus, Poly-America agrees that recycling may be a part of the normal use of a product. The dispute is over how an ordinary observer disposes of the product and thus what an ordinary observer perceives during that disposal.

opinion. This Court has held the jury is "a panel of ordinary observers . . . making a factual determination as to whether they would be deceived by an accused device's design." *See Braun Inc. v. Dynamics Corp. of America*, 975 F.2d 815, 821 (Fed. Cir. 1992) (citing *Gorham*, 81 U.S. at 530). Thus, an expert's opinion of what an ordinary observer would perceive without any scientific support would not assist the jury, as the jury is capable of making the key determination on its own. Indeed, as the Supreme Court expressly stated in *Gorham*:

> Experts, therefore, are not the persons to be deceived. Much less than that which would be substantial identity in their eyes would be undistinguishable in the eyes of men generally, of observers of ordinary acuteness, bringing to the examination of the article upon which the design has been placed that degree of observation which men of ordinary intelligence give.

*Gorham*, 81 U.S. at 594.

## 1.  Collins cannot be simultaneously an expert and a lay observer.

Because experts are not the persons to be deceived, several lower courts have deemed inadmissible proffered expert testimony on the issue of what ordinary observers would perceive where there was a lack of any consumer research to support the opinion.  The District Court of Colorado refused to allow an expert to testify regarding what an ordinary observer might perceive because his opinion was not based on scientific, technical, or other specialized knowledge:

> [I]t would constitute error to permit defendant to present, under the imprimatur of a so-called "expert," an opinion which the witness is, at best, no more qualified than the members of the jury to make.

*Huang v. Marklyn Group, Inc.*, No. 11-cv-01765-REB-ENB, 2014 WL 3559367 (D. Co. July 18, 2014)).

Similarly, the District Court of Washington has held "expert opinions on ordinary observers' thoughts or perceptions will not assist the trier of fact." *Chef'n Corp. v. Trudeau Corp.*, No. C08-01135 MJP, 2009 WL 1564229, at *1 (W.D. Wa. June 4, 2009). *Chef'n Corp*. involved a patented design for vegetable steamers. The district court determined that declarations regarding infringement from witnesses with "decades of experience with and specialized knowledge about kitchen products" were inadmissible for two reasons. *Id.* at *2. First, they were inadmissible as lay witness opinions under Federal Rule of Evidence 701 "because they are based on the declarants' professional experience in the kitchen product market and because there is no indication that either declarant has personal knowledge of ordinary observers' perceptions." *Id.* Second, they were inadmissible as expert opinions under Federal Rule of Evidence 702 because they would not be helpful and "the declarations lack a sufficient factual basis because there is no evidence that the opinions are based on consumer surveys or interviews." *Id.*

The District Court of Delaware has also declined to rely on expert testimony concerning infringement. *Bush Indus., Inc. v. O'Sullivan Indus., Inc.*, 772 F. Supp. 1442, 1450 (D. Del. Sept. 5, 1991). In *Bush Industries*, the court disregarded the plaintiff's expert opinions because he lacked personal knowledge about what an

ordinary observer would perceive. *See id.* Although the expert, Szabo,

> attempted to provide the viewpoint of an ordinary observer, his affidavit was based on his opinion of what an ordinary observer would notice, and not on personal knowledge of consumers' perceptions. Szabo testified at his deposition that he has never been to a showroom in which [the plaintiff's and defendant's furniture] models were displayed, and he has not conducted any surveys or even spoken to any customers.

*Id.* The district court then went further and stated that it could just conduct its own comparison of the designs because "expert testimony is unnecessary under the ordinary observer prong of the infringement test." *Id.*

Relying on *Bush Industries*, the Eastern District of Pennsylvania also found a party's expert report unhelpful. *See Lawman Armor Corp. v. Master Lock Co.*, No. CIV.A. 02-6605, 2004 WL 440177, at *8 (E.D. Pa. Mar. 11, 2004) (citing *Bush Indus., Inc.*, 772 F. Supp. at 1450). In *Lawman Armor*, the expert's infringement analysis consisted of nothing more than his own comparison of the accused designs to the patent.[29] The expert had not conducted any consumer testing or surveys. The district court declined to rely on the expert's comparison of the two designs and instead conducted its own comparison because "nothing more is required under the ordinary observer analysis." *Id.* (citing *Braun*, 975 F.2d at 821).

Like the experts in *Chef'n Corp.*, *Bush Industries*, and *Lawman Armor*, Collins had no personal knowledge of consumers' observations of the accused

---

[29] A1383-86.

design and had not conducted any research to support his speculation as to how a consumer would open the accused box or what a consumer would see when opening or disposing of an accused box. Because the box top and bottom remain closed during the normal use of the product, Collins admitted that the ordinary observer would not be able to see the tabs and slots unless "the box is opened with all the top flaps intact."[30] Collins based his opinion on how a consumer would break down boxes on nothing other than his own experience because he had "no idea what the percentage is" of consumers who open or destroy the box in such a way as to keep all top and bottom flaps preserved such that the features could be observed.[31] As in *Chef'n Corp.*, Collins' testimony should have been deemed inadmissible under Rule 701 and Rule 702.

### 2. Collins had no past experience with ordinary observers' use of corrugated boxes or anything else similar to the accused boxes or patented design.

Collins's expertise in product packaging could not assist the trier of fact, as required by Rule 702, because the product packaging with which he had experience was unlike that at issue in this case. Collins admitted that with "paperboard opening features . . . people have had a vast amount of experience with all kinds of products with all kinds of tear-open features."[32] Collins is not an

---

[30] A845.
[31] A846 (Collins Depo. 182:2-183:20).

17

expert in corrugated packaging: he has not designed or reviewed a design for a corrugated container with a perforated opening that consumers would see on a store shelf.[33] Collins has never tested any corrugated containers.[34] In fact, Collins has "never worked for a company that tested opening features with consumers on paperboard."[35] Consequently, Collins concedes that he has no idea how people would even open corrugated containers.[36] Collins has no more expertise on what an ordinary observer would perceive than a juror, and thus the district court should not have considered his testimony – no matter what it was.[37]

### 3. It was necessary for Collins to support his opinions with consumer testing or surveys, which he did not do.

Collins admitted that you cannot reliably predict how a consumer will interact with a container, and that consumer testing is vital.[38] Thus, by Collins' own admission, even if he had expertise with corrugated containers similar to those at issue in this case – which he did not – no amount of expertise would have helped him in forming his opinions. Collins had to conduct testing to support his opinions.

Other courts have discounted expert opinions even when the expert did conduct testing when the consumer testing failed to identify consumers'

---

[33] A451, A100-102.
[34] A477 (Collins Depo. 146:20-24).
[35] A465-66 (Collins Depo. 65:19-66:2).
[36] A470 (Collins Depo. 70:5-14).
[37] A465-66, A470 (Collins Depo. 65:19-66:2; 70:5-14).
[38] A462, A465-66, A470 (Collins Depo. 61:4-20; 65:19-66:2; 70:5-14).

observations, and instead focused on just their general opinions. *See Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, No. Civ. A. 3:00-CV-088, 2002 WL 1331883 (N.D. Tex. June 14, 2002). In *Minka Lighting*, for example, the plaintiff's expert had conducted consumer surveys that showed that 71 percent of the people polled thought that the accused design and the patented design were "substantially the same design." *Id.* at *5. The district court, however, declined to rely on the expert's opinions for two reasons. First, the court's own comparison led it to conclude that the designs were not substantially similar as a matter of law and thus there was not a factual question that the expert report could address. *Id.* Second, even if the court had considered the report, it would not have found it probative on infringement: The survey failed to define "substantial similarity" because "it is not a concept familiar to the public at large," and thus this particular survey was unhelpful. *See id.* (quoting *Warner Bros., Inc. v. Am. Broadcasting Cos.*, 720 F.2d 231, 245 (2d Cir. 1983) (internal quotation marks omitted)). *Minka Lighting* suggests that the benefit of consumer surveys lies in discovering what features of a design ordinary observers perceive, and without that information to support the expert's opinions, those opinions are not helpful.

Here, Collins should have tested the accused products to determine what ordinary observers perceive because (1) he had no experience testing similar product containers let alone the accused product; (2) case law says that

unsupported lay opinions are insufficient because an expert cannot magically put on an "ordinary observer" hat; and (3) Collins himself says that (a) only testing can determine how consumers open a box[39] or what consumers perceive[40] and (b) he normally always undertakes testing.[41]

The Supreme Court has long held that expert opinions not based on the same carefulness or intellectual rigor as would be employed in regular professional work should not be admitted. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999). Collins had no way of knowing what a typical consumer observes when opening or breaking down corrugated boxes because he had no experience in this area,[42] and thus Collins should have followed the standard practice of the packaging industry to conduct consumer testing.[43] As discussed above, Collins did conduct extensive consumer research to determine customer perceptions for other types of products and product containers when he was not employed in the litigation setting. He did so because it is impossible to predict consumer perceptions of product packaging without testing,[44] and would often modify the

---

[39] A493 (Collins Depo. 201:7-20); A474 (Collins Depo. 142:1-25); A846-47 (Collins Depo. 182:2-8; 182:17-183:20; 186:5-8).

[40] A462 (Collins Depo. at 61:4-11).

[41] A430 (Collins Report ¶¶ 76, 77); A453-58, A460 (Collins Depo. 52:24-56:3; 57:14-21; 59:4-15).

[42] *Supra* Part V.

[43] A430 (Collins Report ¶ 77); A460-61 (Collins Depo. 59:25-60:12).

[44] A430 (Collins Report ¶¶ 76, 77); A453-58, A460 (Collins Depo. 52:24-56:3; 57:14-21; 59:4-15).

package or product design based on the results.[45] Because Collins did not conduct similarly testing here, his testimony fails to meet the rigorousness required under *Kumho Tires* and should not have been relied on by the district court.

Because API cited no other evidence to support its arguments other than Collins' inadmissible opinions, a genuine dispute of material fact existed as to whether an ordinary observer would see the tabs and slots when destroying the box, and summary judgment of non-infringement was improper.

### B. Even if the district court could properly rely on Collins as an expert, Collins' testimony did not bear on the relevant legal question.

#### 1. The policy behind design patents requires an analysis of what is regularly observable.

The policy underlying the statutory scheme for design patents requires that what the hypothetical ordinary observer perceives be more than one instance of theoretical possibility. Design patents are intended to prevent ordinary consumers from being misled into buying different products that appear substantially similar to their intended purpose. In the landmark case *Gorham v. White*, the Supreme Court explained:

> [i]t is persons of [this] class who are the principal purchasers of the articles to which designs have given novel appearances, and if they are misled, and induced to purchase what is not the article they supposed it to be, . . . the patentees are injured, and that advantage of a market which the patent was granted to secure is destroyed.

---

[45] A459 (Collins Depo. 58:17-58:25).

*Gorham*, 81 U.S. at 528. The Supreme Court has long emphasized the importance of actual perception in the analysis: "It is the appearance itself which attracts attention and calls out favor or dislike." *Smith v. Whitman Saddle Co.*, 148 U.S. 674, 678 (1893). Thus, the test for design patent infringement is:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 670 (Fed. Cir. 2008) (en banc) (quoting *Gorham Mfg. Co.*, 81 U.S. at 528).

Because the test for and policy behind design patent infringement focuses on what an ordinary observer perceives, a feature that is not visible or cannot be perceived during the "normal use" of the product is not considered part of the infringement analysis. *See, e.g.*, *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1379-81 (Fed. Cir. 2002) ("Thus, we hold that the 'ordinary observer' analysis . . . must encompass all ornamental features visible at any time during normal use of the product."). While never expressly addressed by this Court, the policy behind design patent infringement suggests that features that are not generally or regularly perceived should not be considered.

## 2. The ordinary observer test considers what hypothetical ordinary observers regularly perceive.

The district court's opinion presumes that if one possible hypothetical ordinary observer could see a feature that would lead the observer to find the accused and patented designs not substantially similar that is sufficient to warrant summary judgment. This Court should make clear that one possible observation is not sufficient and instead require that the feature be regularly, generally or ordinarily observable.

It is always possible for a single hypothetical consumer to notice some difference in two non-identical designs. If the possibility that a single hypothetical consumer might notice a difference were sufficient to defeat a claim of design patent infringement, then there could be no infringement where the patented and accused designs were not identical. Instead, the relevant question is or should be whether the ordinary consumer would regularly or ordinarily perceive the difference. Put differently: design patent infringement should address the usual or normal occurrence, otherwise a single consumer's sharp eye would prevent patent protection for any design.

While Poly-America can find no case in which this Court or any court has addressed the question of how often a feature must be concealed for it to be not considered part of the infringement analysis, prior precedents suggest that the observation must be generally, regularly or ordinarily made. In *Door-Master*

23

*Corp.*, the rear panels of an installed door were substantially different from the patented design, and this Court considered whether they should be considered during the design patent infringement analysis given that they would not be seen when closed. *See Door-Master Corp. v. Yorktowne, Inc.*, 256 F.3d 1308, 1313 (Fed. Cir. 2001). This Court concluded that they should be considered, explaining:

> In addition, the rear features are not ***generally*** concealed. After the door has been installed, the rear features may be temporarily hidden from view when the door is closed. The rear features are visible, however, before the door is installed and when the door is open during use. Accordingly, the rear features are not "hidden" and their appearance is a "matter of concern."

*Id.* (emphasis added). This holding suggests that features that are "generally" concealed should not be considered.

In this case, the features of the top flaps of the accused products would generally be concealed. API's expert testified to this fact, explaining that the features of the top flaps could be observed only if an observer opened the box from the top or destroyed the box in such a way as to keep the top flaps intact.[46]

In *Contessa Food Prods., Inc.*, 282 F.3d at 1379-81, this Court reviewed the district court's infringement analysis which limited the ornamental features observed during "normal use" to those visible at the point of sale. The accused products were plastic shrimp trays that had a design on the underside of the tray

---

[46] A845-47 (Collins Depo. 178:19-25; 181:1-5; 182:2-10; 182:17-183:20; 185:25-186:8).

24

which was not visible at the point of sale but would be visible once the packaging was opened. *Id.* This Court determined that "normal use" extends to the life of the product, not just point of sale and so remanded the case to the district court to consider the design on the underside of the tray. *Id.* at 1381. Yet again, this Court looked to what ordinary observers perceive during their "normal" use of the product, and not what an ordinary observer could perceive in a hypothetical situation. Here, Collins did not (and could not) opine that a consumer would normally open or break down a box in such a way as to reveal the features of the top flaps, which were normally closed.

Further support for considering only those features normally observed comes from *Bush Industries*, where the district court of Delaware explicitly differentiated between features that a hypothetical observer "may or may not notice" and those that "he or she would notice" or "is likely to notice." *Bush Indus., Inc.*, 772 F. Supp. at 1451. When comparing the accused designs to the patent at issue, the court implicitly discounted those features that a hypothetical observer may notice and instead based its opinion on those features that he or she would notice. *See id.* ("Lastly, while the ordinary observer may not notice whether the ogee edge continues around the sides of an entertainment center, and may or may not notice the difference in hardware, he or she would notice that the rails and pilasters in the Bush design provide a fuller and more substantial look than that of any of the three

accused O'Sullivan models."). Here, the district court failed to make a similar distinction in its own infringement analysis.

The frequency of observations has also come up in cases before this Court and others. In *OddzOn Products*, this Court looked at whether the mistaken return of a certain number of accused products (toy balls) was "***typical*** in the industry absent confusion." *OddzOn Prods., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1400-01 (Fed. Cir. 1997) (emphasis added). The plaintiff relied on the fact that some of the defendant's customers had returned the accused products to the defendant as evidence of "actual confusion," but the district court excluded that evidence as irrelevant because it would not be probative of similarity between the two designs unless such returns would not typically occur without confusion. *Id.* This Court found that although the evidence should not have been excluded (because it could be evidence of actual confusion), the exclusion was harmless. *Id.* at 1406. Without being able to determine whether customers typically returned the balls because of confusion or for some other reason, the evidence was not probative of the typical reason for the return. *Id.* at 1406-07. What was important to this Court in *OddzOn* was not that one hypothetical consumer might be confused, but rather whether the typical consumer would be confused. Without evidence that the typical consumer returned the ball because of confusion, the survey evidence was not probative of what an ordinary observer would perceive.

In *Arminak & Assocs. v. St.-Gobain Calmar, Inc.*, 424 F. Supp. 2d 1188, 1200 (C. D. Cal. 2006), a district court also considered frequency evidence to determine who was the relevant ordinary observer. Survey results that showed that "very few" purchasers of products in sprayer bottles took a certain design for a sprayer shroud on the bottle into consideration when purchasing the larger product. *Arminak, Inc.*, 424 F. Supp. 2d at 1200. Because consumers' purchasing decisions did not ordinarily hinge on the appearance of the sprayer shroud, the court determined that "consumers are not at risk of being confused into buying the wrong product by visual similarities between sprayer shrouds." *Id.* at 1201. "To effectuate *Gorham*'s purpose of preventing purchasing decisions based on confusion," the district court declined to find that consumers would be the ordinary observer. As in *Arminak*, in this case, to effectuate *Gorham*'s purpose of preventing purchasing decisions based on confusion, the jury would need to determine whether an ordinary observer would regularly observe the features of the top flap. The district court erred by resolving this factual question based solely on Collins' testimony that an observer could possibly open or destroy the box in a specific way so as to preserve the features that the Court found were not substantially similar between the accused and patented design.

Frequency of observation also came up in *Minka Lighting, Inc. v. Craftmade Int'l, Inc.*, No. Civ. A. 3:00-CV-088, 2002 WL 1331883 (N.D. Tex. June 14,

27

2002). The plaintiff pointed to deposition testimony of one of its retailers who stated that a customer came into his showroom and had confused the accused products with the patented design. *Id.* at 4. The district court placed no weight on that fact, stating that "the mere possibility that one customer may have confused the [accused products with the patented design] does not necessarily mean that an 'ordinary purchaser' would not find the two substantially similar." *Minka Lighting* is yet another example of a court considering what ordinary observers generally, normally, or typically observe and discounting merely hypothetical observations.

All of these cases taken together reflect that the underlying purpose of the ordinary observer test is to determine what the ***ordinary*** observer ***typically*** perceives during the ***normal*** use of the product. It would be entirely contrary to the purpose of design patent protection and the case law supporting it if one hypothetical observer's possible observation of a feature could single-handedly defeat infringement.

### 3. Collins did not opine on what a hypothetical ordinary observer would regularly perceive.

In this case, there was no testimony that ordinary observers would regularly, generally or ordinarily see the top flaps opened and preserved so as to perceive the differences between the patented and accused designs. Instead, Collins testified to what a hypothetical ordinary observer "could" possibly do when opening or breaking down a box, and at the same time, admitted that a hypothetical observer

could open or break down a box so that the tabs and slots are never noticed.[47]

Poly-America does not dispute that it is a possibility that a hypothetical consumer might be able to open a box such that he would preserve the flaps and notice the tabs or slots on a mock up of the patented design or the lack thereof on an accused box; Poly-America contends that the possibility does not make such an observation the regular, general or ordinary observation. Collins did not and could not opine as to what a regular, general or ordinary observer would see; he had no idea as to the frequency with which consumers would make such observations, if ever, because he never did any testing, consumer research, interviews or studies.[48] Thus, even if Collins' opinions met the admissibility requirements for expert witness testimony, his opinion that a hypothetical consumer "could" perceive the tabs and slots does not square with the legal requirement that an ordinary observer would make that perception during the normal use of the product.

To the extent there was any evidence of what an ordinary observer would actually perceive it was evidence that an ordinary observer would not see the features of the top flaps. Ruark Mershon, Poly-America's in-house counsel, testified that when he used the accused products, he opened the box from the perforations (not the top flaps) to remove the bags, and when disposing of the box he did not recall opening the flaps or flattening the box, only that he "threw it in

---

[47] A845-47 (Collins Depo. 178:19-25; 181:1-22; 182:2-183:20; 185:25-186:8).

[48] A845 (Collins Depo. 178:19-25; 181:1-22).

the recycle bin."[49] ████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

This evidence supports Poly-America's position that an ordinary observer would not notice the tabs and slots in the ordinary use of the patented design and raises a genuine dispute of material fact such that summary judgment on non-infringement is inappropriate. Instead, the jury, a collection of ordinary observers, should resolve this factual dispute.

## IX.    Conclusion

For the foregoing reasons, Poly-America respectfully requests that the Court reverse the district court's summary judgment opinion on non-infringement and remand for trial consistent with its opinion.

Dated: March 9, 2015                    By: /s/ Erica W. Harris
                                        Erica W. Harris
                                        LeElle Krompass
                                        **SUSMAN GODFREY L.L.P.**
                                        *Attorneys for Plaintiff-Appellant*
                                        *Poly-America,L.P.*

---

[49] A859 (Mershon Depo. 22:20-25:4).
[50] A97 (Kahana Depo. 58:5-58:21).

# ADDENDUM

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POLY-AMERICA, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 13-cv-693 (SLR) |
| | ) | |
| API INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### [PROPOSED] FINAL JUDGMENT

WHEREAS on November 25, 2014, the Court issued a Memorandum Opinion and Order (D.I. 163, 164) regarding the motions for summary judgment filed by the parties (D.I. 105, 106, 107); and

WHEREAS the Court granted API's motion for summary judgment of non-infringement, granted Poly-America's motion for summary judgment of no invalidity due to anticipation or functionality and Poly-America's motion for summary judgment on API's counterclaim that this is an exceptional case; and denied as moot Poly-America's motion for summary judgment on API's affirmative defenses of statute of limitations, laches, waiver, acquiescence, and estoppel;

IT IS HEREBY ORDERED that:

(1) Final judgment of non-infringement of U.S. Patent No. D569,719 S (the "'719 Patent") is entered in favor of Defendant API Industries, Inc.;

(2) Final judgment of no invalidity of the '719 Patent due to anticipation or functionality is entered in favor of Plaintiff Poly-America, L.P.; and

(3) API's counterclaim for invalidity of the '719 Patent due to obviousness is dismissed WITHOUT PREJUDICE, subject to reinstatement in the event of reversal or remand of the Court's summary judgment rulings on appeal.

Each party shall bear its own costs and attorneys' fees.

**SO ORDERED** this ⏤ day of December, 2014.

The Honorable Sue L. Robinson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

POLY-AMERICA, L.P.,                    )
                                       )
            Plaintiff,                 )
                                       )
      v.                               )   Civ. No. 13-693-SLR
                                       )
API INDUSTRIES, INC.,                  )
                                       )
            Defendant.                 )

ORDER

At Wilmington this 25th day of November, 2014, consistent with the memorandum opinion issued this same date;

IT IS ORDERED that:

1. API's motion for summary judgment of non-infringement is granted. (D.I. 106)

2. API's motion for summary judgment of invalidity is denied. (D.I. 107)

3. Poly's motion to exclude certain opinions of API's expert is denied in part, with leave to renew the remaining arguments should the case proceed to trial. (D.I. 118)

4. Poly's motions for summary judgment of no invalidity due to anticipation and no invalidity due to functionality are granted. (D.I. 105)

6. Poly's motion for summary judgment that Poly's claims are not barred by the statute of limitations, laches, waiver, acquiescence and estoppel is denied as moot. (D.I. 105)

7. Poly's motion for summary judgment that Poly did not fail to state a claim is

denied as moot.  (D.I. 105)

8. Poly's motion for summary judgment that this case is not an exceptional case under 35 U.S.C. § 285 is granted.  (D.I. 105)

United States District Judge

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| POLY-AMERICA, L.P., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 13-693-SLR |
| | ) | |
| API INDUSTRIES, INC., | ) | |
| | ) | |
| Defendant. | ) | |

Brian Farnan, Esquire of Farnan, LLP, Wilmington, Delaware.  Counsel for Plaintiffs.
Of Counsel: Erica W. Harris, Esquire and LeElle Krompass, Esquire of Susman
Godfrey LLP.

Jack B. Blumenfeld, Esquire and Michael J. Flynn, Esquire of Morris, Nichols, Arsht &
Tunnell LLP, Wilmington, Delaware.  Counsel for Defendants.  Of Counsel: William
Thomashower, Esquire and Carla Sereny, Esquire of Schwartz & Thomashower.

**MEMORANDUM OPINION**

Dated:  November 25, 2014
Wilmington, Delaware

**ROBINSON, District Judge**

## I. INTRODUCTION

On April 17, 2013, plaintiff Poly-America, L.P. ("Poly") instituted suit against defendant API Industries, Inc. ("API"), asserting infringement of U.S. Patent No. D569,719 S ("the '719 patent"). The '719 patent, titled "Product Container," issued May 27, 2008. The '719 patent contains a single design claim[1] based on 10 drawings showing different views of a six-sided folding cardboard box with a front opening. API moved for judgment on the pleadings based on its assertion that its cardboard box design is "not substantially similar" to the patented design. On April 10, 2014, the court issued a memorandum and corresponding order denying API's motion for judgment on the pleadings. (D.I. 78; D.I. 79) The court also denied API's subsequent motion for reconsideration of the order denying judgment on the pleadings. (D.I. 104)

Presently before the court are Poly's motion for summary judgment (D.I. 105); API's motion for summary judgment of non-infringement (D.I. 106); and API's motion for summary judgment of invalidity (D.I. 107). Additionally, Poly has filed a motion to exclude certain opinions of API's proposed expert. (D.I. 118) The court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

## II. BACKGROUND

Poly is a limited partnership organized and existing under the laws of the State of Texas. API is a corporation organized and existing under the laws of the State of New Jersey, having its principal place of business in Orangeburg, New York. Poly and API are competitors in the manufacture and sale of household plastic bags, sold in

---

[1] "The ornamental design for a product container, as shown and described." ('719 patent, claim)

cardboard containers at retailers such as The Home Depot, Inc. ("Home Depot").

Prior to 2012, both Poly and API sold trash bag products for Home Depot under the Husky® and UltraSac® brands, respectively. (D.I. 108 at 5; D.I. 121 at 2)  In 2012, Home Depot invited API and Poly to bid on Home Depot's house brand "HDX" business. (*Id.*)  Home Depot selected both API and Poly to supply trash bag products in various sizes and box counts for the HDX brand. (*Id.*)  Poly was selected as the "lead" product, and Home Depot communicated with API regarding a redesign of API's products, which ultimately lead to the production of the accused products. (D.I. 121 at 3)

## III. STANDARDS OF REVIEW

### A. Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986).  A party asserting that a fact cannot be—or, alternatively, is—genuinely disputed must support the assertion either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motions only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce

2

admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586-87; *see also Podohnik v. U.S. Postal Service*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). Although the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment," a factual dispute is genuine where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 411 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial").

**B. Infringement**

3

A patent is infringed when a person "without authority makes, uses or sells any patented invention, within the United States . . . during the term of the patent." 35 U.S.C. § 271(a). A patent holder has the burden of proving infringement by a preponderance of the evidence. *Lee v. Dayton-Hudson Corp.*, 838 F.2d 1186, 1187 (Fed. Cir. 1988). The legal standard for patent design infringement is set forth in the Federal Circuit's opinion in *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008), as follows:

> In some instances, the claimed design and the accused design will be sufficiently distinct that it will be clear without more that the patentee has not met its burden of proving the two designs would appear "substantially the same" to the ordinary observer, as required by *Gorham* [ *Mfg. Co. v. White*, 81 U.S. 511, —— S.Ct. ——, 20 L.Ed. 731 (1871) ]. In other instances, when the claimed and accused designs are not plainly dissimilar, resolution of the question whether the ordinary observer would consider the two designs to be substantially the same will benefit from a comparison of the claimed and accused designs with the prior art....

543 F.3d at 678. In further illuminating the above standard, the Federal Circuit has held that: (a) "articles which are concealed or obscure[d] in normal use[2] are not proper subjects for design patents, since their appearance cannot be a matter of concern," *Contessa Food Prods., Inc. v. Conagra, Inc.*, 282 F.3d 1370, 1379 (Fed. Cir. 2002) (citations omitted); and (b) where a design contains both ornamental and functional features, it is proper "to separat[e] the functional and ornamental aspects" because the scope of the design claim "must be construed in order to identify the non-functional

---

[2]"Normal use" in the design patent context has been defined by the Federal Circuit as the "period in the article's life, beginning after completion of manufacture or assembly and ending with the ultimate destruction, loss, or disappearance of the article." *In re Webb*, 916 F.2d 1553, 1557-58 (Fed. Cir. 1990).

4

aspects of the design as shown in the patent," *Richardson v. Stanley Works, Inc.*, 597 F.3d 1288, 1293 (Fed. Cir. 2010).

### C. Invalidity

#### 1. Functionality

Design patents protect "a new, original and ornamental design for an article of manufacture." 35 U.S.C. § 171. "An article of manufacture necessarily serves a utilitarian purpose, and the design of a useful article is deemed to be functional when the appearance of the claimed design is dictated by the use or purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) (citation omitted). "[T]he determination of whether the patented design is dictated by the function of the article of manufacture must ultimately rest on an analysis of its overall appearance." *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997). Additionally, "a design patent is not invalid if the functional aspect could be accomplished in ways other than by the patented design." *Motorola, Inc. v. Alexander Mfg. Co.*, 786 F. Supp. 808, 812 (N.D. Iowa 1991). An accused infringer may raise the affirmative defense of invalidity due to functionality, and the accused infringer bears the burden of establishing invalidity by clear and convincing evidence. *See L.A. Gear*, 988 F.2d at 1123.

#### 2. Anticipation

Under 35 U.S.C. § 102(b), "[a] person shall be entitled to a patent unless the invention was patented or described in a printed publication in this or a foreign country . . . more than one year prior to the date of the application for patent in the United

5

States."  In the context of design patents, an anticipating publication "must show the same subject matter as that of the patent, and must be identical in all material respects."  *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1461 (Fed. Cir. 1997).  As with infringement, the test for anticipation is whether "in the eye of an ordinary observer . . . two designs are substantially the same."  *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239 (Fed. Cir. 2009) (quoting *Gorham [ Mfg. Co. v. White*, 81 U.S. 511, —— S.Ct. ——, 20 L.Ed. 731 (1871) ]).  The court must consider the "design as a whole," but "this does not prevent the district court on summary judgment from determining that individual features of the design are insignificant from the point of view of the ordinary observer and should not be considered as part of the overall comparison."  *Int'l Seaway Trading Corp.*, 589 F.3d at 1243.  An alleged infringer challenging the validity of a patent under § 102 must establish anticipation by clear and convincing evidence.  *AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1055 (Fed. Cir. 2010).

### 3. Obviousness

"A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."  35 U.S.C. § 103(a).  Obviousness is a question of law, which depends on underlying factual inquiries.

> Under § 103, the scope and content of the prior art are to be determined; differences between the prior art and the claims at issue are to be ascertained; and the level of ordinary skill in the pertinent art resolved.  Against this background the obviousness or

6

> nonobviousness of the subject matter is determined.  Such
> secondary considerations as commercial success, long felt but
> unsolved needs, failure of others, etc., might be utilized to give light
> to the circumstances surrounding the origin of the subject matter
> sought to be patented.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007) (quoting *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966)).

For design patents, "'the ultimate inquiry under section 103 is whether the claimed design would have been obvious to a designer of ordinary skill who designs articles of the type involved.'" *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1380-81 (Fed. Cir. 2009) (quoting *Durling v. Spectrum Furniture Co.*, 101 F.3d 100, 103 (Fed. Cir. 1996)).  Specifically, "the inquiry is whether one of ordinary skill would have combined teachings of the prior art to create the same overall visual appearance as the claimed design." *Durling*, 101 F.3d at 103.  Such an inquiry involves a two step process.  First, the court identifies "a single reference . . . the design characteristics of which are basically the same as the claimed design." *Id.* (citation omitted).  The court must "discern the correct visual impression created by the patented design as a whole" and "determine almost instinctively whether the two designs create basically the same visual impression." *Id.*

Second, "other 'secondary' references 'may be used to modify [the primary reference] to create a design that has the same overall visual appearance as the claimed design.'" *Titan*, 566 F.3d at 1381 (quoting *In re Rosen*, 673 F.2d 388, 391 (CCPA 1982)).  "These secondary references may only be used to modify the primary reference if they are so related [to the primary reference] that the appearance of certain

7

ornamental features in one would suggest the application of those features to the other." *Durling*, 101 F.3d at 103 (citation omitted).

"Because patents are presumed to be valid, *see* 35 U.S.C. § 282, an alleged infringer seeking to invalidate a patent on obviousness grounds must establish its obviousness by facts supported by clear and convincing evidence." *Kao Corp. v. Unilever U.S., Inc.*, 441 F.3d 963, 968 (Fed. Cir. 2006) (citation omitted). In conjunction with this burden, the Federal Circuit has explained that,

> [w]hen no prior art other than that which was considered by the PTO examiner is relied on by the attacker, he has the added burden of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and whose duty it is to issue only valid patents.

*PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1304 (Fed. Cir. 2008) (quoting *Am. Hoist & Derrick Co. v. Sowa & Sons*, 725 F.2d 1350, 1359 (Fed. Cir. 1984)).

## IV. DISCUSSION

### A. The '719 Patent

#### 1. Infringement

Poly alleges that API sells multiple box designs for Home Depot's HDX private label which infringe the '719 patent.[3]  Both parties agree that the patented design claims

---

[3]The five accused box designs are: (a) "HDX 150 Count Kitchen Bags":  SKU 716 866, 13-gallon, 150 count; (b) "HDX Drawstring Large Trash Bags": SKU 960 098, 33-gallon, 50 count; (c) "HDX Extra Large Clear Trash Bags": SKU 677 856, 50-gallon, 50 count; (d) "HDX Extra Large Black Trash Bags": SKU 960 362, 50-gallon, 50 count; and (e) "HDX Waste Basket Liners": SKU 960 428, 10-gallon, 250 count. (D.I. 125 at ¶ 4)

8

at least the following three features previously identified by the court: (1) an opening

front panel with a tab; (2) top flaps with tabs and corresponding slots; and (3) a solid

bottom.[4]  (D.I. 78 at 3)  The parties disagree, however, as to whether these features are

"ornamental" rather than "functional" and whether the accused designs are

"substantially similar" to the claimed design.[5]

In its motion for summary judgment on non-infringement, API first argues that the

front opening flap and "finger friendly" rectangular pull tab of the patented design are

purely functional and, as such, are not properly considered part of the "ornamental

design" for purposes of the infringement analysis.  (D.I. 124 at 20-21)  For support, API

cites to the declaration of its expert, Robert Collins ("Collins"), in which he states that

"[t]he use of the trapezoidal feature . . . balances the structural integrity of the container

while providing the best possible access by the consumer to the product."  (D.I. 110, ex.

B at ¶ 17)  Regarding the tab, Collins opined that "providing a wider [rectangular] tab

---

[4]API further alleges that Figure 8 of the '719 patent shows a "score line" on the
face of the opening flap, a possibility acknowledged by Poly's expert, John R. Howard
("Howard").  (D.I. 153, ex. 2 at 92:9-18)

[5]As to whether the accused designs share common features among themselves,
API contends that one of the accused designs, SKU 716 866, is "representative of all
[accused] designs."  (D.I. 152 at 8 n.6)  API notes that some of the accused designs do
have "small variations in the roundedness of the rectangular tab corners and the type of
perforations" (D.I. 124 at 6 n.6), but Poly concedes that "[t]hese differences are not
substantial as confirmed [by the fact] that neither party noticed the differences and the
changes would not affect API's expert[']s opinion on infringement" (D.I. 125 at ¶ 5).  In
its briefs, Poly refers to three categories of designs, but admits that the differences
between at least two of the design categories are few.  (D.I. 133 at 7)  Specifically, the
first design category (SKU 716 866 and SKU 960 098) differs from the second design
category (SKU 960 362) in the angle of the curve of the tab on the trapezoidal opening.
(D.I. 135, exs. A-C; D.I. 134, ex. 5 at 26:10-13)

makes gripping and tearing open the feature much easier."[6]  (D.I. 110, ex. A at ¶ 66)

Second, API argues that the accused design and the '719 patent share no common ornamental features.  (D.I. 124 at 23)  With respect to the trapezoidal opening and tab, API argues that, even if the court were to determine that these features are ornamental rather than functional, an ordinary observer would not perceive them as being "substantially the same" as those in the accused design.[7]  (Id. at 25)  Specifically, API contends that the claimed opening is only on the front face of the box, while the opening in the accused design additionally extends to the adjacent side panel.  (Id.)  In his expert report, Collins wrote that "[e]ven if the consumer does not readily notice the perforations, when opening the package, the force to pull the front face open continues across and naturally starts tearing across the side perforations, making the second panel opening clear to the consumer of the API box."  (D.I. 126, ex. A at ¶ 91)

As for the remaining two features, API argues that the patented design differs from the accused design in that:  (1) the accused design has top flaps of unequal heights with no tabs and no slots;[8] and (2) the accused design has bottom flaps rather

---

[6]API additionally argues that, even if the court were to find any of the claimed features to be purely functional, it must still consider them as part of the court's infringement analysis.  (D.I. 124 at 21-22)  This argument, however, is inconsistent with the Federal Circuit's holding in Richardson v. Stanley Works, Inc. that the scope of a design patent with both functional and ornamental elements "is limited to those [ornamental] aspects alone and does not extend to any functional elements of the claimed article."  597 F.3d at 1293-94.

[7]API conceded at oral argument that "[f]or purposes of the summary judgment motion, we have accepted that the ordinary observer is the retail consumer."  (D.I. 161 at 17:15-17)

[8]Compare figures 8-10 of the '719 patent.

10

than a solid bottom.[9,10] (D.I. 124 at 6)  API contends that the top flaps and tabs as well as the solid bottom "would be seen by an ordinary observer during the normal use through 'the entire life' of the product." (Id. at 23-24)  In his expert report, Collins stated that the consumer would notice the difference in height of the top flaps and the tabs and corresponding opening slots "upon opening the box from the top or flattening it for recycling, which is part of the life cycle of corrugated boxes." (D.I. 126, ex. A at ¶ 95) Regarding the flat bottom, Collins wrote that the "differences in the bottoms . . . may not be obvious at the time of purchase but would be readily seen by the ordinary observer during use or later when flattening the box for recycling." (Id.)

Poly responds that even if "normal use" encompasses the "ultimate destruction of the product container, there is no evidence that the ordinary observer would either open or dispose of the product container in a way that would preserve intact the tops and slots and solid bottom." (D.I. 133 at 13)  For support, Poly cites Collins' deposition testimony in which he stated that he had "no idea what the percentage is" of consumers opening the top flaps "such that all the top flaps are intact." (D.I. 134, ex. 8 at 182:2-10)

---

[9]Compare figure 14 of the '719 patent.

[10]API does not argue, for purposes of its motion on non-infringement, that the top flaps and tabs and the flat bottom are purely functional, instead referring to the flaps and tabs as "ornamental" features that are not "dictated by function since they could be replaced by glued flaps or an 'auto' closure." (D.I. 124 at 22 n.15, 23)  Poly argues that, insofar as API claimed the top tabs and slots are functional in its briefing for motion for judgment on the pleadings (D.I. 12 at 2 n.3), it is now estopped from arguing that these features are ornamental. (D.I. 133 at 13)  The court recognizes that while the tabs and slots cannot be "functional" for purposes of APIs affirmative defense of functionality and "ornamental" for purposes of API's argument of non-infringement, API's arguments regarding functionality were couched in conditional rather than absolute terms and, as such, do not prevent API from presenting the alternative argument now.

11

Poly also cites Collins' agreement with the statement that a consumer would "have to open the top flaps in a specific way so as to not tear those tabs and slots" in order to notice the tabs and slots. (*Id.* at 178:19-25)

Poly also argues that, because the top flaps and tabs are concealed during normal use, the "only arguably observable design difference is the extension of the perforated opening on API's product beyond the front of the box." (D.I. 133 at 14) Regarding the noticeability of the extended perforations, Poly cites testimony from API's Chief Operating Officer that Home Depot did not want consumers to see the difference between API's box and Poly's box (D.I. 134, ex. 9 at 58:5-21), and testimony from Poly's own Vice President of Sales that customers do not need to open trash bag boxes beyond the front panel to access the contents (*id.*, ex. 11 at 31:2-9). Poly also cites evidence that "at least three [Poly] employees opened the accused boxes without noticing that the perforation extended to a second panel." (D.I. 133 at 14; *see* D.I. 134, ex. 3 at 295:20-24, ex. 10 at 22:20-23:22, and ex. 11 at 23:20-24:1)

With respect to functionality, Poly contends that even if the trapezoidal opening and tab serve a utilitarian purpose, the shape, proportions and placement of the opening and tab are ornamental and impact the "overall appearance" of the design. (*Id.* at 16-17) Poly cites the report of its expert, in which he opined that "there are an infinite number of trapezoidal designs that are equally acceptable in terms of maximizing carton strength." (D.I. 123, ex. 1 at ¶ 17)

In *Egyptian Goddess*, the Federal Circuit held that "when the claimed and accused designs are not plainly dissimilar, resolution of the question of whether the ordinary observer would consider the two designs to be substantially the same will

12

benefit from a comparison of the claimed and accused designs with the prior art."  543 F.3d at 678.  Both parties reference two pieces of prior art that were not considered during the prosecution of the '719 patent:  (1) Hefty® 13 gallon tall kitchen bags style 814; and (2) U.S. Patent No. 4,417,661 to Roccaforte.  API argues that the accused design is closer to the prior art than the '719 patent because both pieces of prior art, like the accused design, contain a "trapezoidal opening flap with starting tab near the center of one face and continuing over the adjacent side."[11]  (D.I. 124 at 11-12)  Poly answers that "the accused design is more similar to the patented design than the prior art" due to differences in the tab shape and perforated line angles of the prior art.  (D.I. 133 at 18-21)

In light of the full record presented on summary judgment, the court concludes that the patented and accused designs are not "substantially the same."  In reaching its conclusion, the court considers the following features of the accused design:  (1) the trapezoidal front opening and tab; (2) the four equal-height tops flaps with tabs and corresponding slots; and (3) the solid bottom.

The first analytical step is to determine which features, if any, should be excluded from the court's infringement analysis by virtue of being purely functional. *See Richardson*, 597 F.3d at 1293.  As for the solid box bottom, the court maintains its conclusion from judgment on the pleadings that the "solid bottom cannot be a design difference that renders the accused product substantially dissimilar because it is not an ornamental design feature."  (D.I. 78 at 3)

----

[11]In its response brief, API references several additional pieces of prior also purportedly showing two-sided trapezoidal openings. (*See* D.I. 152 at 16-17)

13

As for the trapezoidal opening and tab, the court finds that, despite any functionality imparted by the trapezoidal shape and "finger-friendly" tab, the appearance of the opening and tab are nonetheless not "dictated by the use or purpose" as there are alternative ways to place, proportion and position the features. The most notable design element of the accused design is the extension of the perforated opening across two faces of the box rather than just the front face. Other ornamental design elements include the shape of the tab and the angle and shape of the perforated lines.

Regarding the top flaps with tabs and corresponding slots, the court finds that while these features do serve a utilitarian purpose, the shape and position of these features is not "dictated" by function and, therefore, these features have ornamental aspects that should be considered part of the overall patented design.[12] The next question is whether the top flaps, tabs and slots are "concealed or obscured" in the box's normal use, defined as the period in the article's life beginning with "manufacture" and ending with the "ultimate destruction" of the article. *In re Webb*, 916 F.2d 1553. In its memorandum regarding judgment on the pleadings, the court found that the tabs and slots "should not be considered design elements that would be observed by the ordinary observer." (D.I. 78 at 3-4) At that time, however, API was arguing that the "ordinary observer" was a box manufacturer who, in the box's normal use, would view the box before assembly. By summary judgment, API was accepting a retail consumer as the "ordinary observer" and had changed the focus of the "normal use" context to

---

[12]Given the court's finding that the design contains several ornamental features, the court concludes that the "overall appearance" is not dictated by function, and grants Poly's motion for summary judgment of no invalidity due to functionality. (D.I. 105)

14

include the ultimate disassembly and recycling of the box.

In this regard, API presented expert testimony that, regardless of what an ordinary observer would see at the time of purchase, an ordinary observer would view the even top flaps, tabs and slots of the patented design "upon opening the box from the top or flattening it for recycling." (D.I. 126, ex. A at ¶ 95) To defeat API's motion, Poly was obligated to identify a factual dispute with evidence that would permit a reasonable jury to return a verdict in Poly's favor. *See Anderson*, 411 U.S. at 247-48. Although Poly questioned the **frequency** with which an ordinary observer would view these features, it was unable to point to any evidence that would contradict API's contention that the flaps, tabs and slots are visible at the point of disassembly, or that recycling was part of a box's "normal use." (*See* D.I. 134, ex. 8 at 182:2-10) (Collins did not identify the percentage of consumers that would open the top flaps "such that the top flaps are intact.") Because Poly failed to identify a genuine issue of material fact with respect to the "normal use" of the box at issue, the court considers the flaps, tabs and slots as part of the overall design for purposes of its infringement analysis.

To further assist with its side-by-side comparison, the court considered the claimed and accused designs in light of the two prior art designs identified by the parties: (1) Hefty® 13 gallon tall kitchen bags style 814;[13] and (2) U.S. Patent No. 4, 417,661. The court finds that, despite the fact that both the accused and claimed

---

[13]Poly contests the use of Hefty® 13 gallon tall kitchen bags style 814 as a reference for the purposes of the court's validity analysis (D.I. 121 at 12), but does not raise a similar objection to its use as prior art for the purposes of infringement (D.I. 133 at 18-21). Regardless, excluding this reference would not alter the court's conclusion regarding infringement.

15

designs utilize curved rather than straight lines for the perforated opening and tab, the accused design more strongly resembles the prior art given that the perforated opening in both the prior art and accused design extends across two adjacent box faces. Moreover, the four equal-height top flaps, three tabs and corresponding slots in the patented design create a very different visual impression from the four uneven top flaps without tabs and slots in the accused and prior art designs.

In sum, Poly did not proffer evidence related to a box's "normal use," instead relying on the court's reasoning in its prior decision regarding API's motion for judgment on the pleadings. As a result, Poly confined its infringement analysis to the side-by-side comparison a retail consumer would make of the accused products and the patented design on the shelf, relying on the observations of Poly employees in this regard. (*See, e.g.*, D.I. 134, ex. 11 at 31:2-9; D.I. 133 at 14) The court was not provided with actual commercial examples of the accused products or the patented design to aid in its comparison. Moreover, the record reviewed and the burdens of proof are very different in the summary judgment exercise, and Poly proffered no evidence to refute API's expert when he opined that disassembly for recycling is part of a box's "normal use." For all of these reasons and in the absence of contrary evidence, the court accepts that, regardless of what an "ordinary observer" would observe on the shelf, a box's "normal use" extends to its disassembly for recycling, thus exposing all of the claimed ornamental features of the '719 patent which are absent from the accused design. Altogether, then, the claimed and accused designs would not appear "substantially the same" to an ordinary observer. The court grants API's motion for summary judgment of non-infringement.

16

### 2. Invalidity

#### a. Anticipation

Poly moves for summary judgment of no anticipation,[14] arguing that "API's own expert testified that there is no prior art reference that is identical to the patented design" and, therefore, anticipation is inappropriate. (D.I. 121 at 6-7; *see* D.I. 122, ex. 1 at 119:6-14)

API answers that the proper test for anticipation of design patents is whether the reference is "substantially similar," not whether the reference is "identical." *See Int'l Seaway Trading Corp.*, 589 F.3d at 1243. API points out that Poly previously argued that the accused API boxes are "substantially similar" to the patented design despite having perforated openings on two faces. Following the same logic, several pieces of prior art with two-sided perforations would likewise be considered "substantially similar" and would be anticipating references. (D.I. 138 at 26)

In its analysis for infringement, the court concluded that the one-sided perforated opening and equal-height top flaps with tabs and slots are all features of the claimed

---

[14]Poly also moves for summary judgment on: (1) the statute of limitations, laches, waiver acquiescence and estoppel; (2) failure to state a claim upon which relief may be granted; and (3) "exceptional" case status under 35 U.S.C. § 285. Regarding the first issue, API agrees that if Poly limits its suit to only HDX brand boxes and does not include other API boxes that have been on sale for greater than six years, then the suit is not barred by the statute of limitations, laches, waiver, acquiescence or estoppel. (D.I. 138 at 27) As for the second issue, the court has already fully addressed API's pleading in its opinion on API's motion for judgment on the pleadings, and declines to revisit its analysis at the summary judgment stage. (*See* D.I. 78) Finally, the court grants summary judgment that the case does not warrant exceptional case status under 35 U.S.C. § 285 given the parties' shifting contentions (e.g. API's initial "ordinary observer" contention that was rejected by the court) and the efforts expended by the court in reaching its conclusions.

17

ornamental design. Like the test for infringement, the test for anticipation asks whether the accused design and the claimed design "are substantially the same" to an ordinary observer. *See Int'l Seaway*, 589 F.3d at 1239. None of the identified prior art references contains a dual-sided perforated trapezoidal opening in conjunction with a tabbed upper flap and slots and, therefore, none of the prior art references is "substantially the same" as the claimed design. Accordingly, the court grants Poly's motion for summary judgment of no invalidity due to anticipation

### b. Obviousness

In its motion for summary judgment of invalidity, API argues that the patented design is obvious under 35 U.S.C. § 103 because the prior art "consists of a large number of six-sided boxes for packaging a variety of goods."[15] (D.I. 108 at 13) API identifies three primary references that purportedly disclose a six-sided box with a trapezoidal front opening,[16] and three primary references that purportedly disclose a six-sided box with a trapezoidal opening that extends to the adjacent side.[17] API argues that all six references have the "same overall shape" as the patented design but "slight differences in the precise placement" of features. (*Id.* at 19) Moreover, API argues that

---

[15]API asks the court to take judicial notice of the fact that design patents have a high allowance rate and low pendency, and to let this inform the court's assessment of whether the presumption of validity is properly overcome in the instant case. (D.I. 108 at 4) The court declines to do so.

[16](1) Husky® Tall Kitchen Bags (D.I. 109, ex. B); COMMANDER Contractor Bags Box (D.I. 111, ex. A); and GLAD® 13 gallon tall kitchen bag box (D.I. 109, ex. C).

[17](1) Caraustar 00035 and 00043 for HEFTY® 13 gallon tall kitchen bags style 814 (D.I. 109 exs. D, F); "Paperboard Packaging Textbook" drawing (D.I. 109, ex. G at 7.102); and U.S. Patent No. 4,417,661 (D.I. 109, ex. H at fig. 2).

18

the accused design has the "exact same construction" as the second set of references with two-sided trapezoidal openings, thereby placing the accused design "in the prior art." (*Id.* at 20)

API also identifies various "secondary references" from the field of "box containers" that allegedly teach the missing elements of "a rectangular tab connected to the beginning of the opening flap,"[18] and "tabs and corresponding slots."[19] (*Id.* at 21-26) API argues that adding a pull tab to the front face would be obvious to a person of ordinary skill in the art because the feature "is dictated by functional considerations to provide a more effective opening device." (*Id.* at 24; *see* D.I. 110, ex. 1 at ¶ 66) With respect to the top tabs and slots, Collins opined that "[u]sing three of these tabs to be inserted into three corresponding slots formed on an opposite panel score would be an obvious extension of this prior art." (D.I. 110, ex. 1 at ¶ 40)

Finally, API argues that there are no secondary factors to rebut a finding of obviousness. (D.I. 108 at 26) API alleges it did not copy the patented design because: (1) the accused API products "have a trapezoid opening that extends across the front face and continuing to the adjacent side, and not solely on the front face as in the '719 [p]atent;" (2) API had not yet seen the '719 patent in 2012; and (3) the use of the trapezoid was selected for functional considerations. (*Id.* at 26-27) API alleges that, instead of instructing API to copy the patented design, Home Depot instructed API to

---

[18](1) Paperboard Packaging Textbook (D.I. 109, ex. G at 6.102); (2) U.S. Patent No. 4,417,661 (D.I. 109, ex. H at fig. 2); (3) U.S. Patent No. 7,374,076 ("the '076 patent") (D.I. 109, ex. I at fig. 12); and (4) FOOD LION seltzer box (D.I. 109, ex. J).

[19]Paperboard Packaging Textbook. (D.I. 109, ex. G at 6.102)

19

copy the "glossiness" and "cardboard gauge" of Poly's boxes.  (D.I. 122, ex. 12 at
API01549-51; D.I. 139, ex. A at 36:19-25; *id.*, ex. C at 117:13-119:22)  API argues that,
regardless, it would be impossible to copy the patent by looking at Poly's commercial
box because Poly's commercial box does not embody the patented design.  (D.I. 138 at
23)

Poly answers that there is a genuine issue of material fact as to what constitutes
prior art, arguing that several references identified by API either post-date the patent
application or were not "publicly known, used, or for sale" in the United States prior to
the patent application.[20]  (D.I. 121 at 12-13)  Regarding the similarity of the primary
references to the patented design, Poly argues that the primary references do not
include the claimed "ornamental features," which Poly defines as the "specific shape,
design and placement" of the opening.[21]  (*Id.* at 24)  Poly also argues that API failed "to
articulate any reasoning . . . for why a designer of boxes for trash bags" would modify
the primary references with "features from boxes of totally different products."  (*Id.* at

_____

[20]Poly argues that Caraustar 00035 for HEFTY® 13 gallon tall kitchen bags style
814 (D.I. 109 ex. D) was not "actually made" for the client until 2006 (D.I. 109, ex. E at
30:19-31:17).  Poly also argues that a Starbucks® House Blend box (D.I. 110, ex. A at
ex. 8), a Food Lion box (*Id.* at ex. 15), and a Sparkling Seltzer Water box (*Id.* at ex. 16)
were not publicly known or in public use prior to the date of the patent application.  API
responds that the Caraustar box was offered for sale publicly and, therefore, it is an
appropriate pre-dating reference.  API also argues there is no question of fact regarding
the remaining three references because:  (1) it did not cite to the Starbucks® House
Blend box; (2) the Food Lion box is marked as being "manufactured under" a patent
that predates the patent-in-suit; and (3) the Seltzer Water box was noted as
contemporaneous prior art that need not be considered by the court.  (D.I. 138 at 3)

[21]API replies that if the design solely consists of a trapezoidal opening as argued
by Poly, the design is anticipated by prior art disclosing trapezoidal product container
openings as early as the 1983 U.S. Patent No. 4,417,661 to Roccaforte.  (D.I. 138 at 7-
8)

20

25) Moreover, Poly argues that its own expert opined that a designer of ordinary skill would not combine the various pre-existing elements to reach the patented design. (D.I. 121, ex. 1 at ¶ 11)

Finally, Poly asserts that a fact finder could infer knowledge of the patent and intent to copy from, *inter alia*, the fact that API knew that Poly owned intellectual property on the box design (D.I. 122, ex. 9 at API01453), the fact that Home Depot told API to copy Poly's box but to insert its own perforated opening (*id.*), and the fact that API took "the perforation information" for its own design "from artwork provided to [API] from [Home Depot]" (D.I. 110, ex. M at API01553-54). Poly argues that its own boxes implement the patented design despite lacking slots and tabs because the top slots and corresponding tabs are functional and not part of the ornamental design. (D.I. 121 at 28)

The court finds that questions of fact remain regarding the scope of the prior art. (*See supra* note 20) Even if the court were to consider only the undisputed primary and secondary references, both parties present competing expert testimony regarding the motivation to combine features from the secondary references with the primary references, which raises a question of fact. Finally, both parties dispute the existence of the secondary consideration of copying and, viewing the record in the light most favorable to Poly, a reasonable jury could properly credit Poly's evidence in this matter. For these reasons, the court denies API's motion for summary judgment of invalidity.

### B. Motion to Exclude Testimony

Poly moves to exclude: (1) Collins' expert report on non-infringement (D.I. 119,

21

ex. A); (2) those portions of Collins' expert report on invalidity regarding the issue of functionality (D.I. 119, ex. F) ; and (3) Collins' supplemental expert report (*Id.* at ex. B).[22] Poly argues that "Collins is not an ordinary observer or an expert on what an ordinary observer of the accused products observes;  thus, Collins is not qualified to render an opinion of non-infringement." (*Id.* at 3)  Poly specifically takes issue with the fact that Collins did not conduct surveys or interviews of customers before reaching an opinion on infringement despite his admission that consumer research is common in non-litigation settings.[23] (*Id.* at 4, 7-8)  Instead, Poly asserts that Collins based his opinions on his experience observing other consumers viewing other containers in other contexts. (*Id.* at 5)  Poly points out that Collins has never done any testing of opening features of paperboard containers and that his relevant experience is with plastic, not paperboard, containers. (*Id.* at 6-7)

API replies that Collins "has ample and relevant education, training and over 40 years of experience in product packaging." (D.I. 136 at 6)  API refutes Poly's allegation that Collins has no experience with corrugated paperboard products, citing Collins' experience conducting laboratory testing of paperboard packaging as well as his experience creating or supervising the design of corrugated containers. (*Id.* at 6-7, 14-

---

[22]The court focuses its analysis on those arguments relating to the portion of Collins' expert testimony relevant to the court's instant holding, namely, the section of Collins' expert report on non-infringement regarding whether an ordinary observer would notice the difference in height of the top flaps and corresponding slots during the life cycle of the box. (D.I. 126, ex. A at ¶ 95)  Poly's remaining arguments concerning Collins' expert report on invalidity and supplemental expert report are denied without prejudice to renew should the case go to trial on API's counterclaim of invalidity.

[23]Poly's own expert did not conduct surveys or interviews of customers, and Poly elected to not offer any expert testimony on infringement. (*See* D.I. 152 at 14)

22

15) With respect to the particular accused product, API asserts that Collins purchased and examined various accused samples to assist with the preparation of his reports. (*Id.* at 14) Finally, API argues that Collins is qualified to opine on consumer use and reactions given that, over the span of his career, he has been involved in hundreds of consumer tests. (*Id.* at 7)

Rule 702 of the Federal Rules of Civil Procedure allows a qualified witness to testify in the form of an opinion if the witness' "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" and if his/her testimony is the product of reliable principles and methods which have been reliably applied to the facts of the case.

Because Poly focuses on Collins' lack of experience with "opening features" of paperboard containers, it does not meaningfully respond to the assertion that Collins has 40 years of experience in product packaging, some of it involving the design of corrugated paperboard containers, as well as extensive experience with consumer testing. These qualifications meet the liberal standard for 'specialized knowledge' under Federal Rule of Evidence 702, and the court was free to consider such testimony in connection with the summary judgment exercise.

## V. CONCLUSION

For the foregoing reasons, API's motion for summary judgment of non-infringement is granted. (D.I. 106) API's motion for summary judgment of invalidity is denied. (D.I. 107) Poly's motion to exclude certain opinions of API's expert is denied in part, with leave to renew the remaining arguments should the case proceed to trial. (D.I. 118) Poly's motions for summary judgment of no invalidity due to anticipation and

23

no invalidity due to functionality are granted.  (D.I. 105)  Poly's motion for summary judgment that Poly's claims are not barred by the statute of limitations, laches, waiver, acquiescence and estoppel is denied as moot.  (D.I. 105)  Poly's motion for summary judgment that Poly did not fail to state a claim is denied as moot, and Poly's motion for summary judgment that this case is not an exceptional case is granted.  (D.I. 105)



US00D569719S

(12) **United States Design Patent**  (10) Patent No.:  **US D569,719 S**
Ross  (45) Date of Patent:  ** **May 27, 2008**

(54) **PRODUCT CONTAINER**

(75) Inventor: **Michael A. Ross**, Grand Prairie, TX (US)

(73) Assignee: **Poly-America, L.P.**, Grand Prairie, TX (US)

(**) Term: **14 Years**

(21) Appl. No.: **29/302,362**

(22) Filed: **Jan. 15, 2008**

(51) **LOC (8) Cl.** .................................................. **09-03**
(52) **U.S. Cl.** ........................................ **D9/416**; D9/432
(58) **Field of Classification Search** ......... D9/414–433,
D9/748–762, 449, 456; D7/601–602, 629;
206/45.29, 232, 268–271, 484–484.2, 518,
206/557, 459.1, 524.3, 494; 220/287, 556,
220/241–242, 780–781, 350; 229/87.16,
229/100, 123.2, 125, 125.9, 148–149, 153,
229/158, 160, 164, 185–186, 207, 215, 232–243,
229/903, 925
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

D118,010 S * 12/1939 Broderick .................... D9/415
D133,714 S * 9/1942 Medoff ........................ D6/518

(Continued)

*Primary Examiner*—Robert M. Spear
*Assistant Examiner*—Susan E Krakower
(74) *Attorney, Agent, or Firm*—Brandon J. Lee; Akin Gump Strauss Hauer & Feld

(57) **CLAIM**

The ornamental design for a product container, as shown and described.

**DESCRIPTION**

FIG. **1** is a perspective view of a product container in accordance with my new design;

FIG. **2** is a front view of a product container in accordance with my new design;

FIG. **3** is a rear view of a product container in accordance with my new design;

FIG. **4** is a left side view of a product container in accordance with my new design;

FIG. **5** is a right side view of a product container in accordance with my new design;

FIG. **6** is a top view of a product container in accordance with my new design;

FIG. **7** is a bottom view of a product container in accordance with my new design;

FIG. **8** is a perspective view of a product container in accordance with my new design, wherein the top and front flaps are shown in an open configuration;

FIG. **9** is a front view of a product container in accordance with my new design, wherein the top and front flaps are shown in an open configuration;

FIG. **10** is a rear view of a product container in accordance with my new design, wherein the top is shown in an open configuration;

FIG. **11** is a left side view of a product container in accordance with my new design, wherein the top and front flaps are shown in an open configuration;

FIG. **12** is a right side view of a product container in accordance with my new design, wherein the top and front flaps are shown in an open configuration;

FIG. **13** is a top view of a product container in accordance with my new design, wherein the top and front flap are shown in an open configuration; and,

FIG. **14** is a bottom view of a product container in accordance with my new design, wherein the front flap is shown in an open configuration.

It is understood that the broken lines within the claimed design indicates perforations, which form part of the claimed design.

**1 Claim, 10 Drawing Sheets**




## US D569,719 S

Page 2

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 2,529,853 | A | * | 11/1950 | Taggart ..................... 221/63 |
| 2,984,400 | A | * | 5/1961 | Kuchenbecker ............. 229/158 |
| D212,684 | S | * | 11/1968 | Roccaforte ................... D9/416 |
| D268,649 | S | * | 4/1983 | Adamson et al. ............ D9/416 |
| D269,068 | S | * | 5/1983 | Mann et al. ................. D9/416 |
| 4,449,633 | A | * | 5/1984 | Johnson et al. .......... 229/123.2 |
| 4,746,019 | A | * | 5/1988 | Prater ........................ 229/207 |
| D311,493 | S | * | 10/1990 | Boone ......................... D9/416 |
| D353,538 | S | * | 12/1994 | Jobit ........................... D9/432 |
| 5,577,612 | A | * | 11/1996 | Chesson et al. ............ 206/494 |
| D388,951 | S | * | 1/1998 | Mori ........................... D3/201 |
| D402,554 | S | * | 12/1998 | Batchelor .................... D9/433 |
| D412,114 | S | * | 7/1999 | Hansen ....................... D9/416 |
| D419,440 | S | * | 1/2000 | Hansen ....................... D9/416 |
| 6,073,833 | A | * | 6/2000 | Desrosiers et al. ......... 229/235 |
| D433,630 | S | * | 11/2000 | Lubineau-Bigot et al. ... D9/416 |
| D465,416 | S | * | 11/2002 | Dzwill et al. ................ D9/432 |
| 6,488,175 | B2 | * | 12/2002 | Shiffler et al. ................ 221/47 |
| D486,731 | S | * | 2/2004 | Meeker et al. ............... D9/416 |
| D563,219 | S | * | 3/2008 | Okin et al. .................. D9/423 |

* cited by examiner



*FIG.  1*



*FIG. 2*



*FIG. 3*




*FIG. 4*          *FIG. 5*



*FIG.  6*



*FIG.  7*



*FIG. 8*



*FIG. 9*



*FIG.  10*

Case: 15-1248   Document: 28   Page: 77   Filed: 03/11/2015



*FIG. 11*          *FIG. 12*



*FIG.  13*



*FIG.  14*

# United States Court of Appeals
# for the Federal Circuit

*Poly-America, L.P. v API Industries, Inc.,* 2015-1248

## CERTIFICATE OF SERVICE

I, Robyn Cocho, being duly sworn according to law and being over the age of 18, upon my oath depose and say that:

Counsel Press was retained by SUSMAN GODFREY L.L.P., Attorneys for Appellant to print this document. I am an employee of Counsel Press.

On **March 11, 2015** counsel has authorized me to electronically file the foregoing **Corrected Brief for Plaintiff-Appellant (confidential and non-confidential versions)** with the Clerk of Court using the CM/ECF System, which will serve via e-mail notice of such filing to all counsel registered as CM/ECF users, including any of the following:

| | |
|---|---|
| Jack B. Blumenfeld | Mark I. Koffsky |
| (Principal Counsel) | Efrem Schwalb |
| Michael J. Flynn | Koffsky LLC |
| Maryellen Noreika | 349 Fifth Avenue |
| Morris, Nichols, Arsht & Tunnell LLP | New York, NY 10016 |
| 1201 North Market Street | 646-553-1590 |
| PO Box 1347 | mkoffsky@koffskyschwalb.com |
| Wilmington, DE 19899 | |
| 302-658-9200 | |
| jbbefiling@mnat.com | |
| mflynn@mnat.com | |
| mnoreika@mnat.com | |

Additional the confidential brief will be served today via email and paper copies will also be mailed to the above principal counsel on this date.

Upon acceptance by the Court of the e-filed document, six paper confidential copies will be filed with the Court within the time provided in the Court's rules.

This brief was originally filed on March 9, 2015.

March 11, 2014                                   /s/ Robyn Cocho
                                                Counsel Press

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1.      This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) or Federal Rule of Appellate Procedure 28.1(e). The brief contains 7,056 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) or Federal Rule of Appellate Procedure 28.1(e) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 version 14.0.6112.5000 (32-bit) in Times New Roman 14-point font.

/s/ Erica W. Harris
Erica W. Harris
Susman Godfrey L.L.P.
1000 Louisiana Street, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 653-7810
Fax: (713) 654-6666
eharris@susmangodfrey.com
*Attorneys for Plaintiff-Appellant*
*Poly-America, L.P.*

Dated: March 11, 2015